**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORGAN BOREN,<br><br>Plaintiff,<br><br>vs.<br><br>KINNATE BIOPHARMA INC., DEAN J. MITCHELL, NIMA FARZAN, JILL DESIMONE, MELISSA EPPERLY, KEITH FLAHERTY, CARL GORDON, MICHAEL ROME, HELEN SABZEVARI, LAURIE SMALDONE ALSUP, and JIM TANANBAUM,<br><br>Defendants. | Case No.: 3:24-cv-1411<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Morgan Boren ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.     Plaintiff brings this stockholder action against Kinnate Biopharma Inc. ("Kinnate" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections

14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to XOMA Corporation ("Parent") through a wholly owned subsidiary, XRA 1 Corp. ("Merger Sub," and together with Parent, "XOMA") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a February 12, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). The terms of the Merger Agreement are as follows: Kinnate shareholders will receive (i) a base cash price of $2.3352 per share (the Base Price) and (ii) an additional cash amount of not more than $0.2527 per share (together with the Base Price, the Cash Amount) at the closing of the merger plus a non-transferable contingent value right (CVR), representing the right to receive 85% of the net proceeds from any out license or sale of the Kinnate programs effected within one year of closing of the merger or 100% of the net proceeds from any out license or sale executed prior to the closing.

3.      Thereafter, on March 4, 2024, Kinnate filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own company options, restricted stock units, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (b) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5.      As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain

conflicts of interest for management; (b) the financial projections for Kinnate, provided by Kinnate Management to the Board's Special Committee of disinterested and independent directors (the "Special Committee"), to the Board, and to the Company's financial advisor Leerink Partners LLC ("Leerink"); and (c) the data and inputs underlying the financial valuation analyses, that purport to support the fairness opinion by Leerink, and provided to the Company, the Special Committee, and the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7. Plaintiff is a citizen of Idaho and is a Kinnate stockholder.

8. Defendant Kinnate, a clinical-stage oncology company, focuses on the discovery and development of small molecule kinase inhibitors to treat genomically defined cancers in the United States. The Company is incorporated in the State of Delaware, has its principal executive offices located at 800 West El Camino Real, Suite 180, Mountain View, California 94040 and its shares trade on the Nasdaq Capital Market under the ticker symbol "KNTE."

9. Defendant Dean J. Mitchell ("Mitchell") has been a Director of the Company at all relevant times. In addition, Wills serves as the Chair of the Company Board.

10. Defendant Nima Farzan ("Farzan") has been a Director of the Company at all relevant times. Defendant Farzan also serves as the Company's Chief Executive Officer ("CEO").

11. Defendant Jill DeSimone ("DeSimone") has been a Director of the Company at all relevant times.

12. Defendant Melissa Epperly ("Epperly") has been a director of the Company at all relevant times.

13. Defendant Keith Flaherty ("Flaherty") has been a Director of the Company at all relevant times.

14. Defendant Carl Gordon ("Gordon") has been a director of the Company at all relevant times.

15. Defendant Michael Rome ("Rome") has been a director of the Company at all relevant times.

16. Defendant Helen Sabzevari ("Sabzevari") has been a director of the Company at all relevant times.

17. Defendant Laurie Smaldone Alsup ("Smaldone Alsup") has been a director of the Company at all relevant times.

18. Defendant Jim Tananbaum ("Tananbaum") has been a director of the Company at all relevant times.

19. Defendants identified in ¶¶ 10-19 are collectively referred to as the "Individual Defendants."

20. Non-Party Parent XOMA operates as a biotech royalty aggregator in Europe, the United States, and the Asia Pacific.

21. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

**JURISDICTION AND VENUE**

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

**SUBSTANTIVE ALLEGATIONS**

*Company Background*

25. Kinnate, a clinical-stage oncology company, focuses on the discovery and development of small molecule kinase inhibitors to treat genomically defined cancers in the United States. The company develops KIN-2787, a rapidly accelerated fibrosarcoma inhibitor for the treatment of patients with lung cancer, melanoma, and other solid tumors; KIN-3248 small-molecule kinase inhibitors that target cancer-associated alterations in fibroblast growth factor receptors FGFR2 and FGFR3 genes; and small molecule research programs, including Cyclin-Dependent Kinase 12(CDK12) inhibitor in its KIN004 program.

*The Flawed Sales Process*

26. As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company.

27. The Recommendation Statement fails to provide adequate information relating to the fees Lazard Frères & Co. LLC ("Lazard") is to receive in connection with the sale of Exarafenib to Pierre Fabre Médicant ("Pierre Fabre"); and information relating to any work Lazard may have performed for the Company, XOMA or any affiliates in the two years immediately preceding the Proposed Transaction.

28. Additionally, the Recommendation Statement is silent as to the nature of the confidentiality agreement entered into between the Company and XOMA and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Recommendation Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill

provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

29. The Recommendation Statement fails to provide adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

30. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

31. On February 16, 2024, Kinnate and XOMA issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> SAN FRANCISCO and SAN DIEGO, Feb. 16, 2024 (GLOBE NEWSWIRE) -- **Kinnate Biopharma Inc**. (Nasdaq: KNTE) ("Kinnate" or the "Company"), a clinical-stage precision oncology company, today announced it has entered into a definitive merger agreement (the "Merger Agreement") whereby XOMA Corporation ("XOMA") will acquire Kinnate for a price per share of Kinnate common stock ("Kinnate common stock") of between $2.3352 and $2.5879 in cash, consisting of (i) a base cash price of $2.3352 per share and (ii) an additional cash amount of up to $0.2527 per share, plus one non-transferable contingent value right per share, representing the right to receive (a) 100% of the net proceeds payable from any disposition of the Company's investigational pan-RAF inhibitor, exarafenib, and/or any other pan-RAF inhibitors prior to the closing of the merger transaction and (b) 85% of the net proceeds payable from any disposition of other Kinnate assets entered into prior to, or within one year from, closing and received within five years of closing pursuant to a definitive contingent value rights agreement.
>
> Following a thorough review process conducted by a special committee of disinterested and independent members (the "Special Committee") of Kinnate's Board of Directors (the "Board"), with the assistance of the Special Committee's legal and financial advisors, all disinterested and independent members of the Board unanimously determined that the acquisition by XOMA is in the best interests of all Kinnate shareholders, and has, following the unanimous recommendation of the Special Committee, approved the Merger Agreement and related transactions.
>
> Pursuant and subject to the terms of the Merger Agreement, a wholly owned subsidiary of XOMA will commence a tender offer (the "Offer") by March 4, 2024 to acquire all outstanding shares of Kinnate common stock. Closing of the Offer is subject to certain conditions, including the tender of Kinnate common stock

representing at least a majority of the total number of outstanding shares, the availability of at least $120 million of cash (net of transaction costs, wind-down costs and other liabilities) at closing, and other customary closing conditions. Kinnate officers, directors and shareholders holding approximately 46% of Kinnate common stock have signed support agreements under which such parties have agreed to tender their shares in the Offer and support the merger transaction. The merger transaction is expected to close in the first half of 2024**.**

*Potential Conflicts of Interest*

32.     The breakdown of the benefits of the deal indicates that Company insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Kinnate.

33.     Company insiders currently own large, illiquid portions of Company stock, which will be exchanged for merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Recommendation Statement provides the following:

| Name of Executive Officer or Director | Number of Shares (#) | Cash Consideration for Shares ($) |
|---|---|---|
| Nima Farzan | 2,186 | 5,657 |
| Neha Krishnamohan | 21,899 | 56,672 |
| Mark Meltz | 11,953 | 30,933 |
| Richard Williams, Ph.D. | 51,963 | 134,475 |
| Jill DeSimone | — | — |
| Melissa Epperly | — | — |
| Keith Flaherty, M.D. | 66,377 | 171,777 |
| Carl Gordon, Ph.D.[(1)] | 8,009,729 | 20,728,378 |
| Dean Mitchell | — | — |
| Michael Rome, Ph.D. | — | — |
| Helen Sabzevari, Ph.D. | — | — |
| Laurie Smaldone Alsup, M.D. | — | — |
| Jim Tananbaum, M.D.[(2)] | 13,718,311 | 35,501,617 |

34.     Company insiders currently own large, illiquid portions of in-the-money options and restricted stock units, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public

- 7 -
COMPLAINT

stockholders of the Company. The Recommendation Statement provides the following but does not account for the merger consideration each of these amounts will be exchanged for upon the consummation of the Proposed Transaction:

| Name of Executive Officer or Director | Number of Shares Subject to In-the-Money Options (#) | Cash Consideration for Stock Options ($) |
|---|---|---|
| Nima Farzan | 1,281,642 | 22,941 |
| Neha Krishnamohan | — | — |
| Mark Meltz | 384,508 | 6,883 |
| Richard Williams, Ph.D. | 324,009 | 5,800 |

| Name of Executive Officer or Director | Number of Shares Subject to In-the-Money Options (#) | Cash Consideration for Stock Options ($) |
|---|---|---|
| Jill DeSimone | — | — |
| Melissa Epperly | — | — |
| Keith Flaherty, M.D. | 88,176 | 78,211 |
| Carl Gordon, Ph.D. | — | — |
| Dean Mitchell | — | — |
| Michael Rome, Ph.D. | — | — |
| Helen Sabzevari, Ph.D. | — | — |
| Laurie Smaldone Alsup, M.D. | — | — |
| Jim Tananbaum, M.D. | — | — |

| Name of Executive Officer | Number of Kinnate RSUs (#) | Cash Consideration for Kinnate RSUs ($) |
|---|---|---|
| Nima Farzan | — | — |
| Neha Krishnamohan | 42,188 | 109,178 |
| Mark Meltz | 15,625 | 40,436 |
| Richard Williams, Ph.D. | 15,625 | 40,436 |

35. Furthermore, certain employment agreements with certain Kinnate executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant several directors or officers entitled to them, millions of dollars, compensation not shared by Plaintiff.

| Name of Executive Officer | Salary Severance ($)(1) | Bonus Severance ($)(2) | Prorated Bonus Severance ($)(3) | Other Benefits ($)(4) |
|---|---|---|---|---|
| Nima Farzan | 918,918 | 505,405 | 56,156 | 145,083 |
| Neha Krishnamohan | 458,600 | 183,440 | 30,573 | — |
| Mark Meltz | 484,600 | 193,840 | 32,307 | 72,939 |
| Richard Williams, Ph.D. | 507,500 | 203,000 | 33,833 | 60,819 |

36. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation. Communications regarding post-transaction employment, during the negotiation of the underlying transaction, must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

37. Thus, while the Proposed Transaction is not in the best interests of Kinnate, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Recommendation Statement*

38. On March 4, 2024, the Kinnate Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

> *Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

39. The Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

    a. Information relating to the fees Lazard Frères & Co. LLC ("Lazard") is to receive in connection with the sale of Exarafenib to Pierre Fabre Médicant ("Pierre Fabre"); and information relating to any work Lazard may have performed for the Company, XOMA or any affiliates in the two years immediately preceding the Proposed Transaction;

b. Whether the confidentiality agreements entered into by the Company with XOMA differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including XOMA, would fall away; and

d. Provide adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

*Omissions and/or Material Misrepresentations Concerning Kinnate's Financial Projections*

40. The Recommendation Statement fails to provide any financial projections for the Company provided by Company Management to the Special Committee, the Board, and Leerink.

41. The Recommendation Statement, therefore, should have, but fails to provide, any projections for Kinnate management.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

42. The Recommendation Statement fails to provide the Company's financial projections.

43. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

44. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Leerink's financial analyses, or make an informed decision whether to tender his shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning Kinnate Management Dissolution Analysis*

45. The Recommendation Statement fails to provide material information concerning Company Management's Dissolution Analysis provided by Company Management to the Special Committee, the Board, and Leerink and relied upon by Leerink in its analyses.

46. With respect to the *Dissolution Scenario A*, the Recommendation Statement fails to disclose:

    a. Personnel & Benefits, including the underlying inputs, metrics, and assumptions used to determine same;

    b. Exarafenib, including the underlying inputs, metrics, and assumptions used to determine same;

    c. Other Pipeline R&D Costs, including the underlying inputs, metrics, and assumptions used to determine same;

    d. G&A Costs, including the underlying inputs, metrics, and assumptions used to determine same;

    e. Operating Expenses, including the underlying inputs, metrics, and assumptions used to determine same;

    f. Interest Income, including the underlying inputs, metrics, and assumptions used to determine same;

    g. Net Loss, including the underlying inputs, metrics, and assumptions used to determine same;

    h. Stock-based Compensation, including the underlying inputs, metrics, and assumptions used to determine same;

    i. Depreciation and Amortization, including the underlying inputs, metrics, and assumptions used to determine same;

    j. Changes in Working Capital, including the underlying inputs, metrics, and assumptions used to determine same;

    k. Total Adjustments, including the underlying inputs, metrics, and assumptions used to determine same;

    l. Cash Burn, including the underlying inputs, metrics, and assumptions used to determine same; and

    m. Other Payables at Liquidation, the underlying inputs, metrics, and assumptions used to determine same, including specifically: severance, transaction bonus, transaction expenses and insurance.

47. With respect to the *Dissolution Scenario B*, the Recommendation Statement fails to disclose:

    a. The underlying inputs, metrics, and assumptions requested under Paragraph 48, subsections a through m above; and

    b. Impact of Exarafenib Asset Disposition Prior to Initial Distribution, the underlying inputs, metrics, and assumptions used to calculate same, including specifically: operating expenses and cash flow items (i.e., accrued expenses and deposits).

48. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Leerink*

49. In the Recommendation Statement, Leerink describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

50. With respect to the *Analysis of Cash Amount*, the Recommendation Statement fails to disclose:

    n. The underlying inputs, metrics, and assumptions used to determine the Closing Net Cash amount of $128.2 million utilized; and

    o. The underlying inputs, metrics, and assumptions used to determine the Additional Price Per Share of $0.1726 utilized.

51. With respect to the *Dissolution Analysis*, the Recommendation Statement fails to disclose the following:

    a. The underlying inputs, metrics, and assumptions used to determine the initial distribution amount of $84 million or $1.7653 per Share;

    b. The underlying inputs, metrics, and assumptions used to determine the final distribution amount of $31 million or $0.5657 per Share; and

    c. The assumptions used to determine the discount rate of 4.88% utilized.

52. With respect to the *Sensitivity Analysis*, the Recommendation Statement fails to disclose the following:

    a. The underlying inputs, metrics, and assumptions used to determine the Closing Net Cash amount of $131.2 million utilized;

    b. The underlying inputs, metrics, and assumptions used to determine the initial distribution amount of $86 million or $1.8112 per Share;

    c. The underlying inputs, metrics, and assumptions used to determine the final distribution amount of $32 million or $0.5796 per Share; and

    d. The assumptions used to determine the discount rate of 4.88% utilized.

53. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

54. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

55. Plaintiff repeats all previous allegations as if set forth in full herein.

56. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

57. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

58. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

59. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

60. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

61. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

62. Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

63. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

64. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

65. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

66. SEC Rule 14d-9 requires a Company's directors to furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

67. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

68. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

69. Plaintiff has no adequate remedy at law.

### THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

70. Plaintiff repeats all previous allegations as if set forth in full herein.

71. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

72. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved,

and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

73. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Kinnate's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

74. The Individual Defendants acted as controlling persons of Kinnate within the meaning of Section 20(a) of the Exchange Act. Because of their position with the Company, the Individual Defendants had the power and authority to cause Kinnate to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Kinnate and all of its employees. As alleged above, Kinnate is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

1  D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 8, 2024

**BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*